UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| DAVID DAVENPORT, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:06-CV-392 RM |
| | ) | |
| JAMES GLASS, et al., | ) | |
| | ) | |
| Defendants | ) | |

OPINION AND ORDER

David Davenport, a pro se prisoner, filed a complaint seeking monetary damages under 42 U.S.C. § 1983 for the defendants' alleged failure to protect him from his cellmate. The defendants seek summary judgment. For the reasons the follow, the court grants the defendants' motion.

On July 15, 2004, James Glass stabbed David Davenport, his cellmate at Miami Correctional Facility four times. Mr. Glass and Mr. Davenport began sharing a cell eighty-six days earlier after Mr. Glass asked to move into the cell Mr. Davenport already occupied. Mr. Glass asked several times before the stabbing to be moved from the shared cell. The record doesn't reveal when Mr. Glass first asked to be moved, but Sally Stevenson's July 7 memorandum to Mr. Glass acknowledged she had previously forwarded his request to Unit Team Manager Haley Lawson. Two days before the attack, Mr. Glass wrote Amy Clark that he asked for a "bed move several times." Although he didn't tell Ms. Clark the reasons he requested the move, Mr. Glass noted that he had explained his reasons

to Sally Stevenson and Tracie Riggle (formerly Waddle).[1] Ms. Stevenson turned the matter over to Ms. Lawson. Mr. Glass also told her Ms. Riggle "took my bunk and move me in his bunk." Mr. Glass didn't view this action favorably: "Look like to me she trying to make a bad situation worser [sic]," he complained. This move apparently occurred after Ms. Stevenson referred Mr. Glass's request for a bed move to Mr. Lawson.

On the day of the attack, Ms. Lawson wrote Mr. Glass:

> I have received your request sent to Miss Stevenson and have been asked to respond. I have looked into your situation and you requested to live with your roommate and therefore you will need to wait 90 days before you can move to another room. Once your 90 days is up you may turn in another room trade with another offender, which agrees to trade with you.

Ms. Lawson acknowledges knowing the two weren't happy living together, buts says she knew nothing that indicated to her that Mr. Glass posed any particular threat to Mr. Davenport. Because she didn't know a substantial danger of serious harm existed, she argues her decision not to move Mr. Glass didn't reflect deliberate indifference.

The night Mr. Glass stabbed Mr. Davenport, Sgt. Jerry Wilcox substituted for another officer in the housing unit where the attack occurred. Since that wasn't his regular post, he knew nothing about either man. At the start of his

---

[1] After the stabbing Mr. Davenport submitted many grievances regarding the handling of Mr. Glass's request for a cell change. In one of them he professed that Ms. Riggle knew Mr. Glass believed Mr. Davenport "set him up" to get caught with tobacco. (document # 30-2 at 14).

shift, Sgt. Wilcox met with both Mr. Glass and Mr. Davenport because the officer he relieved told him there was a conflict between them. Nothing in that meeting alerted Sgt. Wilcox that either prisoner intended to harm the other. He directed each prisoner to put his complaints in writing for the casework manager. Sgt. Wilcox also discussed the situation with his superior, who already knew about it. The captain advised Sgt. Wilcox the prisoners' cell had been searched for weapons.

After the stabbing, Sgt. Wilcox wrote a conduct report against Mr. Glass for "committing a battery upon another person with a weapon." That report related:

> On the day and time stated above I Sgt. Wilcox was standing at the podium when I heard an offender say Wilcox he stuck me. I then looked up and saw the offender Davenport # 904991 had blood on the back shoulder area. I also saw Offender Glass standing off to the left of the podium with a weapon type object in his right hand. I Sgt. Wilcox called a "10-10" then gave numerous verbal commands to Offender Glass to drop the weapon to the floor and cuff up. Offender Glass refused to comply with every command given to him. Ofc. M. Rush who being yard and also QRT arrived at the scene. Ofc. M. Rush immediately assisted me with Offender Glass giving him two verbal commands to drop the weapon. Upon his refusal to do so Ofc. Rush then pulled his oc pepper spray and applied 2 second bursts to the facial area causing Offender Glass to release the weapon from his right hand and drop it to the floor. At this time I Sgt. Wilcox applied cuffs to this offender and he was taken from the unit to seg.

Ms. Clark, an administrative assistant/grievance specialist at MCF, denied knowing of any conflict between the two men before the attack. Neither Ms. Riggle, a counselor, nor Chelsey Click (formerly Lockner), a casework manager, submitted a declaration, but both knew Mr. Glass wanted to change his cell. Both of those defendants argue that because neither could make a cell change, each did all she could by notifying someone else about the situation. While the record indicates

3

Ms. Riggle informed Ms. Lawson, it doesn't show to whom Ms. Click referred the situation.

MCF expects prisoners to stay together at least ninety days. Several reasons support this policy: bed shortage makes cell transfers disruptive; any move potentially involves placing a prisoner in a threatening situation; honoring all requests for cell reassignment reduces incentive to practice tolerance; most prisoners at MCF are in double cells; any special accommodations would be required at the new location, and complaints about cellmates are common. MCF Superintendent John VanNatta delegated to unit team managers the responsibility for cell changes. Similarly, Ms. Stevenson, an assistant superintendent at MCF, wasn't directly involved in responding to Mr. Glass's cell move request.

Mr. Glass attacked Mr. Davenport on day eighty-six of the ninety-day period policy said he should remain in the cell. In several grievances Mr. Davenport filed after the attack, he claimed Mr. Glass requested a move to avoid "someone being hurt" because of unspecified "serious problems" between them. There is no record Mr. Davenport complained of threats from Mr. Glass, or asked to be moved, before the attack.

The summary judgment standard is the same regardless of whether a party is represented by counsel. Outlaw v. Newkirk, 259 F.3d 833, 836-837 (7th Cir. 2001). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact couldn't find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. Crull v. Sunderman, 384 F.3d 453, 459-460 (7th Cir. 2004). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004); Rand v. CF Indust., Inc., 42 F.3d 1139, 1146 (7th Cir. 1994) ("Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors . . .").

The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); see also Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)); Anderson v. Liberty Lobby, 477 U.S. at 252 ("The mere existence of a

5

scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

Prison officials have a qualified duty to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825 (1994); *see also* McGill v. Duckworth, 944 F.2d 344, 347 (7th Cir.1991) (finding duty to protect prisoners is logical correlative of state's obligation to replace prisoners' efforts at self-protection).While not every injury a prisoner suffers at the hands of another violates the Eighth Amendment's prohibition on "cruel and unusual punishments," prison officials are responsible to the injured victim if their deliberate indifference effectively condoned the attack by allowing it to happen, because "[b]eing violently assaulted in prison is simply not part of the penalty." Farmer v. Brennan, 511 U.S. at 834; *accord* Brown v. Budz, 398 F. 3d 904, 909 (7th Cir. 2005).

The right to reasonable protection doesn't include the right to protection from random acts. McGill v. Duckworth, 944 F.2d at 348 ("some level of [danger] . . . is inevitable no matter what guards do"). A prison official who is "aware of an obvious, substantial risk to inmate safety" can't escape liability by establishing "he did not know that the [prisoner] was especially likely to be assaulted by the specific prisoner who eventually committed the assault." Farmer v. Brennan, 511 U.S. at 843.

An Eighth Amendment claimant doesn't need to show a prison official acted or failed to act believing harm would actually befall a prisoner; it's enough to

6

establish the defendant acted or failed to act despite knowing a substantial risk of serious harm to the plaintiff existed. Farmer v. Brennan, 511 U.S. at 840-841. The risk must be more specific than the general inherent risks of violence all prisons hold; prison officials can't be expected to eliminate the possibility of all dangers. McGill v. Duckworth, 944 F.2d at 344-345 ("Prisons are dangerous places"). It's not enough the official "should have known" of a substantial risk or that a reasonable officer in the situation would have known of the risk. Negligence does not satisfy the "deliberate indifference" standard. Sellers v. Henman, 41 F.3d 1100, 1102 (7th Cir. 1994). Nor is it enough to show a defendant merely failed to act reasonably. Gibbs v. Franklin, 49 F.3d 1206, 1208 (7th Cir. 1995).

Deliberate indifference is comparable to criminal recklessness, and is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." Duane v. Lane, 959 F.2d 673, 677 (7th Cir. 1992). A defendant must have "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." McGill v. Duckworth, 944 F.2d at 347. The defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." Farmer v. Brennan, 511 U.S. at 837. Deliberate indifference can be inferred only where defendants know

7

there is a strong likelihood rather than a mere possibility that violence will occur. Watts v. Laurent, 774 F.2d 168, 172 (7th Cir. 1985).

Courts have found Eighth Amendment violations due to the failure to protect where a prison official ignored a prisoner's complaints about a cellmate. *See, e.g.,* Velez v. Johnson, 395 F.3d 732, 736-737 (7th Cir.2005) (finding deliberate indifference when prison guard failed to respond to the emergency call of prisoner whose cellmate was attacking him); Haley v. Gross, 86 F.3d 630, 642-643 (7th Cir.1996) (upholding verdict for prisoner because jury could reasonably find deliberate indifference where he repeatedly complained of problems with cellmate but defendants did nothing).

To prevail at trial, Mr. Davenport would have to show he suffered a serious harm and that each defendant knew "there was a substantial risk beforehand that the serious harm might actually occur." Brown v. Budz, 398 F. 3d at 913. The defendants don't dispute that Mr. Davenport can meet the "serious harm" prong of his Eighth Amendment claim. Rather, they argue entitlement to summary judgment because the individual defendant was either not responsible for separating the cellmates and/or not deliberately indifferent to a substantial risk that harm would result if they were not separated.

Mr. Davenport sues seven defendants. Four of those defendants simply had nothing to do with the attack. Former Superintendent VanNatta had delegated cell change authority to case managers, and Assistant Superintendent Stevenson had no cell change responsibilities. Defendants Click and Riggle were counselor and

8

casework manager, respectively, but neither had authority to make cell changes. Liability under 42 U.S.C. § 1983 requires personal involvement in the alleged constitutional deprivation. *See, e.g.,* Smith v. Gomez, 550 F.3d 613, 618 (7th Cir. 2008). No matter how favorably to Mr. Davenport the record is viewed, none of these four defendants had personal involvement in what befell Mr. Davenport. Each is entitled to judgment.

Ms. Lawson and Ms. Riggle knew Mr. Glass wanted to be moved, but nothing in the summary judgment record would support an inference that either defendant drew an inference that a substantial risk of harm to Mr. Davenport existed. Mr. Davenport himself never expressed concern over his safety, or even asked for separation from Mr. Glass for any reason. Mr. Glass had filed grievances in which he claimed to be in a "perilo[us] situation" and that Ms. Riggle kept him in the room with Mr. Davenport "whether my life was in peril or not." Mr. Glass had warned that he and Mr. Davenport had "serious problems and that someone need[ed] to be move[d] before someone get hurt." But Mr. Glass's grievances don't disclose the source of the strife between the two men, or the specific reasons why he asked for the move. They certainly show no risk to Mr. Davenport.

Perhaps by the night of the assault, matters had come to enough of a head that a physical threat could be inferred; the guard that Officer Wilcox relieved gave Officer Wilcox a "heads up" concerning the two, and Officer Wilcox tried to talk to them. But this record allows no finding that even then, one would infer that Mr. Glass posed a threat of violence to Mr. Davenport. More importantly since

9

defendants Lawson and Riggle (together) had cell assignment authority, nothing in the summary judgment record would allow a finding that defendants Lawson or Riggle were "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [drew] the inference." Farmer v. Brennan, 511 U.S. at 837. Defendants Lawson and Riggle are entitled to summary judgment.

Finally, Officer Wilcox cannot be liable for cell assignments in which he had no personal involvement, but Mr. Davenport seeks to hold Officer Wilcox liable for failing to intervene as Mr. Glass stabbed Mr. Davenport. Officer Wilcox says he didn't see the stabbing. Mr. Davenport says it happened right in front of Officer Wilcox who just stood and watched. This is the sort of factual dispute a jury could resolve either way; to decide whether a trial is needed, the court assumes the jury would believe Mr. Davenport.

But accepting the accuracy of Mr. Davenport's testimony that Officer Wilcox was present, standing and watching, does not justify accepting Mr. Davenport's conclusion that Officer Wilcox could have stopped the stabbing with the use of pepper spray. Mr. Davenport's description of the stabbing doesn't have much detail — understandably so, since he was being stabbed — that would allow a trier of fact to find Officer Wilcox's response unreasonable to the point of deliberate indifference.

A prison guard is not required to place himself in danger of physical harm when two inmates are engaged in a fight. See Guzman v Sheahan, 495 F. 3d 852,

10

858-859 (7th Cir. 2007) (citing Peate McCann, 294 F. 3d 879, 883 (7th Cir. 2002)). In Peate, both prisoners had weapons and one was on the verge of attacking a defendant officer. Peate v. McCann, 294 F. 3d 882. In Guzman, a prisoner armed with a broom used it against another, unarmed, prisoner while a correctional officer watched, called for assistance, and left the scene to secure backup; the court of appeals found the officer didn't exhibit deliberate indifference because she acted reasonably where it was clear attempting to break up the fight would place her in "significant jeopardy." Guzman v. Sheahan, 495 F. 3d at 859.

The summary judgment record contains nothing that would allow a factfinder to decide Officer Wilcox, even under Mr. Davenport's recollection of the facts, acted anything other than reasonably. The record contains no evidence about how long the stabbing took, the distance between Officer Wilcox and the prisoners, whether Mr. Glass was in a position to see Officer Wilcox if Officer Wilcox approached, the accessibility of Officer Wilcox's pepper spray, or the relative sizes of the three men. All that can be said with any degree of confidence is that one of the three men — the most aggressive of the three by far, at that point — was armed with a deadly weapon. It is Mr. Davenport's burden at the summary judgment stage to point to evidence that would support a finding in his favor. No reasonable trier of fact could find on this record that Officer Wilcox's failure to intervene amount to deliberate indifference to Mr. Davenport's safety.

For all of these reasons, there are no genuine issues of material fact and each defendant is entitled to judgment as a matter of law. The court GRANTS the

defendants' summary judgment motion (doc. #40). The clerk shall enter judgment for the defendants.

SO ORDERED.

ENTERED:  March 3, 2009

  /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court